Cecil JONES, Plaintiff-Appellant,

v.

**WESTERN GEOPHYSICAL COMPANY OF AMERICA, Defendant-Appellee.**

No. 81–2001.

United States Court of Appeals,
Fifth Circuit.

March 3, 1982.

Anthony P. Griffin, Galveston, Tex., for plaintiff-appellant.

Fulbright & Jaworski, A. Martin Wickliff, Jr., Eric T. Washington, Houston, Tex., for defendant-appellee.

Before GEE, GARZA and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

This appeal arises from an employment discrimination suit timely brought pursuant to section 706 of Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff Jones alleged that he was discharged after nearly five years as Western's employee because he was black and that Western maintained discriminatory policies and practices. The district court found that the plaintiff had failed to present the existence of a genuine issue of material fact sufficient to overcome a motion for summary judgment, and the court therefore granted the defendant's motion for summary judgment and denied plaintiff's motion for new trial. We reverse and remand.

Plaintiff was hired as a sweeper by Western on December 26, 1973. At the time of his discharge, on November 2, 1978, he had been promoted to mechanic's helper in the truck shop of defendant's Galveston, Texas, facility. In the months prior to his discharge, plaintiff had been warned various times that his work was too slow. According to his own deposition, plaintiff responded to these criticisms by saying that he "wasn't going to rip and run and break my neck and hurt myself" but that he would try to work harder. Several days prior to his discharge plaintiff was asked by his immediate supervisor to "clean out" the column guards on vibrator trucks. Western claims that plaintiff took over twice as long to complete the column-guard cleaning job as did the average employee, but plaintiff claims that he had never been instructed in the particular task and was in fact specifically told to take his time. Jones was subsequently discharged for "failure to meet production requirements."

A year after suit had been filed and after Jones' deposition had been taken and interrogatories answered, Western moved for summary judgment. Western attached to its motion the affidavit of its personnel director. According to that affidavit, Western hired a black person, Toby James, on November 15, 1978, to replace Jones. Western submitted that summary judgment was appropriate because, under the rationale of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979), Jones had failed to establish a prima facie case of employment discrimination as he had failed to establish the fourth element of *McDonnell Douglas*, which requires that a plaintiff show that after his discharge his employer hired a person who was not in the plaintiff's protected class, *i.e.*, black.

Jones filed no affidavits in opposition to Western's motion. Relying solely on his deposition, he argued that genuine issues of material fact existed as to whether: (1) Western's reason for terminating him was a pretext; (2) the hiring of James was a pretext; and (3) Western maintained disparate working conditions for blacks and whites. The district court nonetheless granted, on June 3, 1980, Western's motion for summary judgment for failure to establish a prima facie case under *McDonnell Douglas*. Jones timely moved for a new trial [1] on the basis of newly discovered evi-

---

1. Although the parties and the district court all proceeded to deal with plaintiff's motion as one for "new trial," neither the parties nor the court identified whether it was a motion under Fed.R.Civ.P. 59(a)(2) or Fed.R.Civ.P. 59(e). As this was a motion essentially for reexamination

dence and attached to his motion affidavits by himself, Anthony Griffin (his attorney), Toby James, and J. H. Broussard (a former employee of Western).

Affiant James outlined his checkered history of employment with Western. According to James, he first worked for Western 'as an assemblyman in 1973. He was "laid off" and rehired as a deck hand, laid off a second time and rehired yet again as part of a field crew, fired on the same day and rehired a fourth time a year later, in 1975, as a sweeper. After 90 days as a sweeper, James claims he was fired for his "attendance record, tardiness [and] working too slow" but was hired yet a fifth time in 1978, again as a sweeper. After four to five months, James claims he was fired again for the same "invalid" reasons but was hired again in 1978 "as a mechanic's helper to work the night shift." James further testified as follows:

> I was hired with the understanding that I would be a burner. To my knowledge, Cecil Jones was a layout person, a job which I have little or no knowledge of and a job, to my knowledge, [that] is totally different from a burner job. My experience at Western reveals that a mechanic's helper has in it very specialized jobs. The sixth time I was fired for the same reason, the only addition being the failure to produce doctors' statements concerning being absent (again, the reason for termination is in dispute).

> It is my understanding that one other person (a Mexican-American) was hired and fired under the same or similar circumstances. My work experience would be up to probationary period and thus a subsequent termination. I was generally rehired in new positions which was curious in that I was fired on a number [of] occasions.

James' description of the different subcategories of tasks within "mechanic's helper" was corroborated by Broussard, another former employee of Western. In his affidavit, Broussard stated:

> At Western no written job descriptions existed, the job duties and responsibilities were manipulated to fit the company's specific need . . . . The absence of written job descriptions created another problem—individuals were classified in broad terms when in fact they performed and were qualified in totally different skilled positions. An example is found in the term "mechanic helper." Common job experience provides that realistically no one person is classified as mechanic helper. The term can be broken down into various subcategories, such as burners and layout persons. Each described subcategory required different technical and theoretical levels of expertise.

Jones, in his affidavit, affirmed that his job had been that of "layout person," not burner, and that he worked the day shift, not the night shift. Moreover, he alleged that "the description of 'mechanic's helper' is too broad . . . ."

Western filed a response to the plaintiff's motion for "new trial," claiming that plaintiff's new evidence was untimely presented, since it could have been discovered earlier had plaintiff used "reasonable and due diligence" and, bolstered by an affidavit from a mechanic shop supervisor still at Western, Western denied that Toby James ever worked as a burner or on the night shift. Although Western called James' testimony "a bad-faith affidavit," the company conceded that it had "inadvertently" failed to reveal James' employment record:

> With respect to attachment number 2 of Western Geophysical's responses to plaintiff's first interrogatories, Toby James' employment history prior to February 25,

---

of an order finally disposing of an action prior to trial, we presume that it was a motion for reconsideration under Fed.R.Civ.P. 59(e).

> Since the addition of subsection (e), the courts which have considered the problem seem to have experienced no difficulty in concluding that a motion for rehearing or

consideration made within ten days after the entry of an appealable order is within the coverage of Rule 59. . . .

*Gainey v. Brotherhood of Railway & Steamship Clerks*, 303 F.2d 716, 718 (3d Cir. 1962). *See also Woodham v. American Cystoscope Co.*, 335 F.2d 551, 555 (5th Cir. 1964).

1977, was inadvertently left off this company record. As can be seen, however, from exhibit number A attached hereto, James worked as a mechanic's helper and he resigned on three different occasions and was discharged on two other occasions.

Western further denied the allegations in the other affidavits filed by plaintiff.

The district court agreed with Western and denied Jones' motion for "new trial." Specifically, the court found that:

First, the evidence is not of the type which by due diligence could not have been discovered and presented to the court prior to its granting of summary judgment. Second, the "new" evidence does not present any genuine issue of fact that would warrant this court's withdrawal of its summary judgment order.

Dealing with the district court's latter finding first, we conclude that it misapplied the well-established standard for granting summary judgment. While "[s]ummary judgment is an excellent device by which district courts may make expedited disposition of those cases in which a trial would be fruitless," *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980), the district court may grant it "only when the moving party has established his right to judgment with such clarity that the nonmoving party cannot recover ... under any discernable circumstance." *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir. 1980). The district court, when deciding whether to grant a motion for summary judgment, must view the evidence in the light most favorable to the party resisting the motion. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Pursuant to Fed.R.Civ.P. 56, summary judgment may be granted only where the entire record, *i.e.*, pleadings, depositions, interrogatories, etc., shows that no genuine issue of material fact exists. *Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co.*, 644 F.2d 424, 428 (5th Cir. 1981). The mover must bear the burden of proof, and "all reasonable doubts as to the existence of

the genuine issue of material fact" have to be resolved against him. *Id.* The fact that it appears that the nonmover is unlikely to prevail at trial or that the mover's facts appear more plausible are not reasons to grant summary judgment. *Hayden v. First National Bank*, 595 F.2d 994, 997 (5th Cir. 1979). The trial court has no duty to decide factual issues, only whether there is an issue of fact to be tried. *Foster v. Swift & Co.*, 615 F.2d 701, 702 (5th Cir. 1980). We have also instructed that summary judgment should be "used cautiously" in Title VII cases. *Hayden v. First National Bank*, 595 F.2d at 997, *quoting Lavin v. Illinois High School Association*, 527 F.2d 58, 61 (7th Cir. 1975). Although we have occasionally approved summary disposition of certain employment discrimination cases,[2] we agree with the Fourth Circuit that "ordinarily summary disposition of Title VII cases is not favored, especially on a 'potentially inadequate factual presentation.' " *Logan v. General Fireproofing Co.*, 521 F.2d 881, 883 (4th Cir. 1971), *quoting Williams v. Howard Johnsons, Inc.*, 323 F.2d 102, 105 (4th Cir. 1963).

This case presents an instance of "potentially inadequate factual presentation." The district court here improperly decided factual issues and went beyond its sole duty to determine whether an issue of material fact existed.[3] In its findings of fact issued after denial of plaintiff's motion for new trial, the district court found, inter alia:

Finding of Fact No. 2. At the time of his discharge, plaintiff was classified as a mechanic's helper in the truck stop of defendant's Galveston facility and, as such, performed *all* the duties of a mechanic's helper.

. . . .

Finding of Fact No. 13. On November 15, 1978, plaintiff was replaced by Toby James, Jr., a black person.

(emphasis added). These findings ignore the evidentiary contradictions presented by

2. See, e.g., *Aquamira v. Eastern Air Lines, Inc.*, 644 F.2d 506 (5th Cir. 1981).

3. Compare *Gross v. Southern Railway Co.*, 414 F.2d 292, 297 (5th Cir. 1969).

the parties' war of affidavits. The affidavits attached to the plaintiff's motion for "new trial" presented genuine issues of fact as to the employer's motive and intent that should have been developed and decided by the factfinder at a trial on the merits. *Compare Foster v. Swift & Co.*, 615 F.2d at 702. Toby James' sworn testimony is inconsistent with the district court's finding that he was a replacement for Jones in two respects. First, it is not clear that James was hired to replace Jones at all. As Jones' attorney stated in his affidavit, further discovery on the nature of Western's job classifications and on the question of whether a night shift existed would have helped to resolve this issue.

■ Second, James' testimony suggests that even if he was hired to replace Jones, this need not mean that the plaintiff failed to establish a prima facie case under *McDonnell Douglas.* As the district court acknowledged, the four elements of *McDonnell Douglas* are by no means the only way of proving a prima facie case of racial discrimination. The Supreme Court in *McDonnell Douglas* stated that "[the] facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required ... is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802 n.13, 93 S.Ct. at 1824. As we said in *Hedrick v. Hercules,* 658 F.2d 1088, 1093 n.4 (5th Cir. 1981):

> It is, therefore, clear that the *McDonnell* Court did not intend to establish an exclusive prima facie evidence test for discrimination in employment but rather recognized the need for the modification of the prima facie test depending on the nature of the case.

*See also Daves v. Pay Less Cash Ways, Inc.,* 661 F.2d 1022, 1025 n.2 (5th Cir. 1981); *McCorstin v. United States Steel Corp.,* 621 F.2d 749 (5th Cir. 1980).

■ In this case, Toby James' testimony is consistent with plaintiff's argument that his replacement by another black person was a pretextual device, specifically designed by Western to disguise its act of discrimination toward Jones. The district court acknowledged as much in its findings of fact but found this not conclusive to establish a prima facie case:

> The court notes that plaintiff alleges in his opposition to summary judgment that the hiring of Toby James was a pretext for discrimination and done only to meet the requisites of the *McDonnell Douglas* test. Even if it were not true that Toby James was hired only for such purpose, it would not be determinative. Plaintiff has failed to offer any evidence that the *reason articulated by defendant for plaintiff's termination was a pretext*, that is, a ruse for a racially discriminatory decision.

(emphasis in original). As authority for this last statement, the district court cited *Whiting v. Jackson State University,* 616 F.2d 116 (5th Cir. 1980).[4] *Whiting,* however, was there dealing with the plaintiff's ultimate burden of persuasion in a Title VII case, not with the burden of establishing a mere prima facie case. *Id.* at 121. As the Supreme Court pointed out in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), the latter is not an "onerous" burden. All that the plaintiff need do is prove by a preponderance of the evidence that he was discharged from the position for which he was qualified "under circumstances which give rise to an inference of unlawful discrimination." *Id.* The underlying purpose of the fourth element in the *McDonnell Douglas* formulation is precisely to establish this unlawful inference of discrimination. But proof that the employer replaced the fired minority employee with a nonminority employee is not the *only* way to create such an inference. We have no difficulty in finding that the affidavits presented by the plaintiff here permit an inference of discrimination sufficient to satisfy the fourth element of *McDonnell Douglas.* An employer does not usually

---

4. "If the employer effectively rebuts the plaintiff's charge, the plaintiff must be afforded a fair opportunity to establish that the employer's asserted justification is, in fact, a ruse for a racially discriminatory decision." *Id.* at 121.

rehire—once, much less six times—a former employee who has repeatedly resigned and been fired for incompetence. Plaintiff provided a plausible explanation for the employer's otherwise unexplained action in this respect. In order to grant Western's motion for summary judgment, the district court apparently chose to believe Western's version of the facts, together with those presented by its affiant, over those presented by Jones. We express no view as to whether this may be appropriate after a full trial, but this was, of course, premature and improper at this stage in the proceedings. By making a preliminary showing that (1) he was a member of a protected class, (2) who was qualified for his job, (3) yet was discharged and, (4) if replaced at all, was replaced by a person who, according to the employer, had always been "an unreliable and tardy employee," the plaintiff's affidavit, together with those of James and Broussard, presented genuine issues of material fact sufficient to overcome a motion for summary judgment.

Neither are we convinced that the affidavit testimony was evidence that, by due diligence, could "have been discovered and presented to the court prior to its granting of summary judgment." Western admitted in its response to the plaintiff's motion for "new trial" that it had "inadvertently" failed to include James' employment record in its information provided to plaintiff pursuant to his discovery motions and repeated requests for production of documents. Only Western possessed the relevant information. Plaintiff was excusably ignorant. *See, e.g., Edgar v. Finley*, 312 F.2d 533, 537–38 (8th Cir. 1963). Plaintiff was forced to stumble in the dark and understandably came across the evidence some days after the district court's entry of final judgment but prior to the court's entry of formal findings of fact and conclusions of law.

REVERSED and REMANDED.