**Judy Carol HOLLAND**

v.

**Elizabeth H. DOLE, Secretary of Transportation, and Ray A. Barnhart, Federal Highway Administrator.**

No. 3–84–0068.

United States District Court, M.D. Tennessee, Nashville Division.

July 9, 1984.

984

Aleta G. Arthur, Nashville, Tenn., for plaintiff; Robert Belton, Professor of Law, Nashville, Tenn., of counsel.

Joe Brown, U.S. Atty., Nashville, Tenn., James C. Thomason III, Asst. U.S. Atty., Birmingham, Ala., James D. Billett and James E. Scapellato, Atlanta, Ga., for defendants.

## MEMORANDUM AND ORDER

JOHN T. NIXON, District Judge.

In compliance with Federal Rule of Civil Procedure 52(a), this Memorandum constitutes the Court's findings of fact and conclusions of law in regard to the pending motion of Judy C. Holland seeking preliminary injunctive relief against the defendants Elizabeth H. Dole, Secretary of the United States Department of Transportation, and Ray A. Barnhart, Federal Highway Administrator. The plaintiff maintains that she has been unlawfully denied employment opportunities because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to the defendants' refusal to promote her to the position of motor carrier safety specialist at the de-

fendants' Nashville, Tennessee division office. The plaintiff's motion for a preliminary injunction was heard on May 4, 1984. At that time the plaintiff requested a preliminary injunction requiring the defendants to give written notification to any persons whom the defendants selected for the position of motor carrier safety specialist in Nashville, Tennessee or Montgomery, Alabama that this sex discrimination lawsuit pends before the Court. The plaintiff requests this relief in order to prevent the defendants from bestowing "innocent victim" status upon any persons selected to fill vacancies in the two locations; thereby preserving the opportunity for this Court to order appropriate rightful place relief under 42 U.S.C. § 2000e–5(g), if the plaintiff successfully establishes a violation of her rights under Title VII. The defendants oppose the extraordinary equitable relief sought by the plaintiff.

■ Subsequent to the preliminary injunction hearing, the defendants on June 11, 1982 filed an alternative motion to dismiss or for summary judgment in their favor. In its motion the defendants argue that the plaintiff can not establish a prima facie case of discrimination due to the absence of a vacancy in the Nashville office for which the plaintiff could make application. Defendants' Memorandum of Law In Support of Their Motion to Dismiss or In the Alternative for Summary Judgment at 14–15. The plaintiff opposes the defendants' motion and maintains that this Court should enter partial summary judgment for the plaintiff, finding that the plaintiff has established a prima facie case of discrimination.[1]

Having considered the pleadings, interrogatory answers, responses to admissions, production of documents and affidavits, this Court ORDERS that the plaintiff's request for injunctive relief be GRANTED and that the defendants' motion for dismissal or alternatively for summary judg-ment be DENIED and the plaintiff's request for partial summary judgment be DENIED.

## I. STANDARD OF REVIEW

■ The granting or denial of preliminary injunctive relief involves consideration of four questions, which guide the district court in exercising its discretion when ruling on a request for injunctive relief. The burden of proof is on the plaintiff to establish: (1) that the plaintiff has a strong or substantial likelihood or probability of success on the merits; (2) that the plaintiff will suffer irreparable injury without injunctive relief; (3) that the issuance of a preliminary injunction would not cause substantial injury to others; and (4) that granting the plaintiff's request for preliminary injunctive relief would serve the public interest. *Mason County Medical Association v. Knebel,* 563 F.2d 256, 261 (6th Cir. 1977). Because preliminary injunctive relief is inherently equitable, the district court's exercise of discretion is not tied to any one of the four questions. *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979).

■ In determining whether to grant a movant's request for summary judgment most courts employ a cautious approach. *Smith v. Pan Am World Airways,* 706 F.2d 771, 773 (6th Cir.1983). This is especially true in the context of a Title VII case because the ultimate question is a determination of the sensitive and elusive issue of intentional discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). The guidance afforded by the Court of Appeals in *Jones v. Western Geophysical Co. of America,* 669 F.2d 280, 283 (5th Cir.1982), also a Title VII case, is illustrative.

---

1. Even though the plaintiff has not formally moved for partial summary judgment, this Court may enter partial summary judgment for the non-moving party when it is clear no genuine issue of material fact exists and the parties have been given the opportunity to present evidence. 10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 2720 (2d Ed. 1983).

The district court, when deciding whether to grant a motion for summary judgment must view the evidence in the light most favorable to the party resisting the motion. Pursuant to FED.R.CIV.P. 56, summary judgment may be granted only where the entire record, i.e., pleadings, depositions, interrogatories, etc., shows that no genuine issue of material fact exists. The mover must bear the burden of proof, and "all reasonable doubts as to the existence of the genuine issue of material fact" have to be resolved against [the mover]. The fact that it appears that the non-mover is unlikely to prevail at trial or that the mover's facts appear more plausible are [sic] not reasons to grant summary judgment. The trial court has no duty to decide factual issues, only whether there is an issue of fact to be tried.

*Id.* at 283 (citations omitted).

## II. FINDINGS OF FACT

The plaintiff began her employment as a clerk-typist with the Nashville Office of the Federal Highway Administration (FHWA) on March 23, 1980. On August 10, 1980 the plaintiff's position was converted to a career-conditional, part-time position as a clerk-typist. The next day the plaintiff reported for duty to Hugh Galbreath, Officer-in-Charge, at the FHWA, Nashville, Tennessee Division Office. Mr. Galbreath is the plaintiff's supervisor. Plaintiff's Request for Admissions (hereinafter "Admissions") Nos. 1 and 2; Admissions Exh. 1.

On September 23, 1980, Galbreath recommended that the plaintiff's position be upgraded from permanent part-time to permanent full-time. Mr. Galbreath expressed his reason for recommending that plaintiff's status be upgraded in his letter to W.L. Barrow, director of the Region 4 Office of Motor Carrier Safety for the FHWA, located in Atlanta, Georgia. Admissions Exh. 2. That letter stated in relevant part that the plaintiff was "performing work at a level greater than outlined" in her job description, that she was "handling incoming telephone calls from motor carriers, drivers and the public to such an extent that at least fifty percent of incoming calls never [had] to be handled by [Galbreath] or an investigator," and that the plaintiff did much of her work "unsupervised with an unusual amount of self-motivation." *Id.* The defendants, however, did not accept the recommendation of Galbreath that the plaintiff's position be upgraded, but on March 8, 1981 the plaintiff was promoted from clerk-typist to secretary, part-time. Admissions Nos. 3 and 4.

On September 16, 1981, Galbreath recommended to Barrow that the plaintiff's job description be changed to Highway Safety Management Assistant or similar title and that she be allowed to receive on-the-job training in the office and in the field. Mr. Galbreath's recommendation was based upon several concerns: the need to provide greater assistance to the office, the need to fill a vacancy due to the anticipated retirement of Claud C. Gatlin, a male investigator assigned to the defendants' Nashville office and the need to comply with the defendants' Affirmative Action Upward Mobility Program for Region 4. Galbreath's letter states as follows,

In keeping with the Affirmative Action Policy of Region 4, I am proposing that an upward mobility position be established in the Nashville Motor Carrier Safety Office. It is anticipated that Claud C. Gatlin will retire as soon as he has the opportunity and certainly no later than 1984. The proposed upward mobility position would be created in the Nashville Office to be filled by Ms. Judy Holland, who is presently a secretary in the Motor Carrier Safety Office. Ms. Holland has expressed a desire to be a safety investigator, and with her background with a motor carrier and one year in this office, I believe she is qualified and has the ability to become an investigator through the upward mobility program.

I recommend that beginning as soon as possible, Ms. Holland's position be reclassified under the job description Highway Safety Management Assistant or similar title, and that she be allowed to receive

on the job training both in the office and in the field accompanying other investigators whenever her present office duties permit. I also recommend that after receiving this type training for a period of one year, and depending on the amount of training received, she be considered for promotion to a GS–7. Upon the retirement of Safety Investigator Gatlin, Ms. Holland would then be classified as a Highway Safety Management Specialist or equivalant, provided she receive at least a fully satisfactory performance rating for the on the job portion of her training.

I realize this proposal is not complete and does not meet all the requirements of personnel, however it is a proposal only, and will be written in detail upon approval of Region and with the guidance of the personnel office.

Admissions Exh. No. 4. The recommendation of Galbreath was concurred in by W.L. Barrow, Admission Exh. No. 5, who further emphasized that a promotion of the plaintiff would support the Department's affirmative action plan for women. Consistent with that goal Barrow noted in his concurrence that the plaintiff "would be an asset to the Motor Carrier Safety Program." Admissions Exh. No. 5.

Due to his recommendation to promote the plaintiff, Galbreath received a rating of "highly successful" by Barrow in "Affirmative Action and EEO Accomplishments" for the period ending November 29, 1981. The plaintiff's proposed position was Technical Assistant to Officer-in-Charge of the Nashville Office, which is a career ladder investigative position. Admissions Exh. No. 6. Mr. Barrow noted in his evaluation in reference to Galbreath's recommendation to promote the plaintiff that "at the present time we are waiting for [the] Regional Personel Office to take some further action" Id. Mr. Galbreath's failure to submit anyone for consideration under the Region 4 Upward Mobility Program in March 1982, resulted in Barrow informing Galbreath to revise his critical job element. Mr. Barrow, moreover, informed Galbreath in the March 30, 1982 memorandum that

with the retirement of Mr. Gatlin in Galbreath's office, he could no longer audit three field offices and that appropriate consideration should be given to making some territorial changes to cover the Middle Tennessee areas left by the retirement of Mr. Gatlin. Admissions Exh. No. 7.

On May 17, 1982, a new position was created for the Motor Carrier Safety Office in Nashville, Tennessee with the title of "Motor Carrier Safety Assistant (Typing)." Admissions No. 12. This new position arose from the determination in the Nashville field office that it had a greater need for a clerical/technical assistant than for a regular clerk-typist or secretary. Admissions No. 13. The person filling this position is expected to be familiar with the business and industrial community where regulatory and enforcement activities take place. Admissions No. 16. Among other responsibilities, the new position of Motor Carrier Safety Assistant (Typing) requires that the person review shippers' and carriers' records for the proper application of regulations and make appropriate recommendations on required actions, Admissions No. 18, and to answer routine technical and non-technical questions concerning the Motor Carrier Safety and Hazardous Materials Programs. Admissions No. 19. *See also* Admissions No. 8.

When the plaintiff commenced work in the position of Motor Carrier Safety Assistant (Typing) on June 27, 1982, she was issued credentials to perform her new job. These credentials certified that the plaintiff was duly accredited as Motor Carrier Safety Assistant and that she had the authority

> to enter upon, to inspect, and examine lands, buildings, and equipment, and to inspect and copy records and papers of carriers and other persons, in performance of his [sic] duties under the Department of Transportation Act, related acts, and regulations of the Department.

The plaintiff's performance in the position of Motor Carrier Safety Assistant (Typing) was rated outstanding by Michael J. Boyle, personnel officer, for the period

March 1982 to March 1983. Admissions Exh. Nos. 14 and 15. In explaining his evaluation, Boyle stated in reference to the plaintiff that she "spends the major portion of her time performing technical assistance assignments and other duties normally associated with a Motor Carrier Safety Specialist position. Day-to-day routine assignments include participating with the supervisor or independently conducting safety management audits, hazardous materials audits, and other reviews pertinent to the MCS program. The employee's current duties and responsibilities coupled with the supervisory controls and other FES factors support a reclassification of the position as a [Motor Carrier Safety Specialist]." Admissions Exh. No. 15. Moreover, Boyle concluded that a typist was no longer needed in the plaintiff's position further strengthening Boyle's opinion that the plaintiff should be promoted to a Motor Carrier Safety Specialist position. After reviewing Boyle's recommendation on an evaluation of the plaintiff and the plaintiff's position, E.G. Oakley, division administrator FHWA, forwarded Boyle's memorandum on the plaintiff to Leon N. Larson, Regional Federal Highway Administrator, with the observation that even though plaintiff received an outstanding evaluation, no recommendation for an award was made at that time. Mr. Oakley explained that an immediate award to the plaintiff would be premature because her position would be audited soon and there was a possibility of a promotion. Admissions Exh. No. 14.

The retirement of Claud C. Gatlin appears to have been a home-made arrangement designed to accomodate the interests of all parties. As articulated by Galbreath and Barrow, the retirement of Gatlin would create a vacancy in which the plaintiff could be promoted pursuant to the Department's affirmative action plan for women. Moreover, because Gatlin wanted an early retirement by prior arrangement, the early retirement could be accomplished if defendants transferred Gatlin to Kentucky and yet retain his position in Nashville. Affidavit of Claud C. Gatlin, Jr.

The plaintiff's expectation to be promoted to the position of Motor Carrier Safety Specialist in Nashville springs not only from the recommendations of Galbreath and Barrow but also from statements of personnel officer, Boyle, made to her during his evaluation of the plaintiff's job. Mr. Boyle stated that promoting the plaintiff to that position in Nashville was a perfect opportunity for defendants to accomplish upward mobility of women pursuant to its equal employment opportunity goals. He qualified his statements, however, due to his concern about what attitude the new regional administrator, Leon Larson, would have about promoting women to such a position. Although the defendants have denied that Boyle made any such statements to the plaintiff, the proof before the Court does show that the plaintiff was told on the day Larson visited Nashville and met with Oakley and Galbreath, that she would not be promoted to the position of Motor Carrier Safety Specialist in Nashville because her position was part-time. Exhibit D to Plaintiff's Preliminary Injunction Motion. Additionally, the Court deems suspect Larson's statements given the facts that he changed the nature of the plaintiff's position after visiting Nashville on April 27, 1983 by limiting her to purely secretarial work. Admissions Exh. 16.

The plaintiff's efforts to capture the motor carrier safety specialist position continued after Larson's rebuff, when on April 29, 1983 the plaintiff visited Larry C. Hanna, Region 4 director of the FHWA office of administration. Mr. Hanna was familiar with the plaintiff having reviewed evaluations of the plaintiff's work in approving her promotion to the position of Motor Carrier Safety Assistant (Typing), Admissions Exh. No. 8, and issuing her appropriate credentials. Admission Exh. No. 12. Mr. Hanna did not mention that the plaintiff's part-time status was a factor in the defendants' decision not to promote her to Motor Carrier Safety Specialist in Nashville, thereby further undercutting the defendants' explanation for not promoting the

plaintiff. The net result of Larson's action was to deny the plaintiff the vacancy in Nashville created by Gatlin's retirement. The plaintiff was relegated to performing the secretarial duties in her job description despite the earlier assurances, since 1980, from her supervisor and personnel officer within the knowledge of FHWA administrator, that she was slated for upward mobility under the defendants' affirmative action plan for women.

After the plaintiff lost the opportunity for a promotion to the Motor Carrier Safety Specialist position in Nashville, someone placed on her desk a vacancy announcement for a similar position in Raleigh, North Carolina. The deadline for applications for this position was April 3, 1984. Prior to the deadline date for the Raleigh position, the plaintiff received a vacancy announcement for a similar position in Montgomery, Alabama. The deadline for the Montgomery vacancy was April 4, 1984. The plaintiff applied for both the North Carolina and Alabama vacancies within the applicable deadlines. The plaintiff was successful and received an offer for the North Carolina position. She was given three days to accept the North Carolina position. Affidavit of Holland. Through her attorney the plaintiff received a two day extension of time to accept the North Carolina position. Affidavit of Aleta Arthur ¶ 5, Exh. B. The plaintiff accepted the North Carolina position on April 11, 1984 unaware that a day earlier the defendants found her eligible for the Alabama position. Notice to the plaintiff of her eligibility for the Alabama position was not received by the plaintiff until five days after she had accepted the North Carolina position. Affidavit of Holland ¶¶ 11, 12.

### III. CONCLUSIONS OF LAW

#### A. Likelihood of Success

In order for the plaintiff to show a strong likelihood of success on the merits, the parties agree that the plaintiff must present a prima facie case of discriminatory failure to promote. Based upon the theory enunciated by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981) and as reaffirmed in *United States Postal Service Board v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the United States Court of Appeals for the Sixth Circuit in *Brown v. State of Tennessee,* 693 F.2d 600 (6th Cir.1982) developed a four-part formula that must be satisfied in order to establish a prima facie case of discriminatory failure to promote, to wit: (1) the plaintiff belongs to a protected group; (2) applied for and was qualified for the position sought; (3) was considered for and denied the position and (4) was rejected in favor of other employees of similar qualifications who are not members of the plaintiff's protected group. *Id.* at 603.

In the present case, it is clear that the plaintiff, a female citizen of this Nation, is a member of a class protected under Title VII. The evidence before the Court clearly indicates that the defendants have trained the plaintiff over the past three years for elevation to a Motor Carrier Safety Specialist position. The defendants admit that the plaintiff is qualified for such a position. Admission No. 30. Indeed, recognizing the plaintiff's qualifications, the defendants have found the plaintiff acceptable for the Motor Carrier Safety Specialist position in Montgomery, Alabama. The plaintiff has been rejected for such positions in Nashville and Montgomery. In April, 1983, she was told by the defendants that she would not get the Nashville vacancy and the defendants selected a male to fill the Montgomery vacancy.

The defendants' motion seeking dismissal of this case is based upon their belief that no vacancy existed into which the plaintiff could be promoted. Upon the retirement of Claud Gatlin, the defendants argue that his position was transferred to Kentucky, thus no vacancy existed in Nashville. Affidavit William L. Barrow at 2. Moreover, given that the Kentucky position was filled by a female, the defendants assert no possible inference of gender-base

discrimination exists. Barrow Affidavit ¶ 6. This Court believes that dismissal of this case is inappropriate based on a summary judgment motion because of the conflicting assertions presented in the evidence before the Court. There is disputed evidence on whether the vacancy created by Gatlin's retirement was transferred out of Nashville or the position previously projected for the plaintiff. The affidavits of Barrow contradict assertions made by other agents of the defendants.[2] At this point the Court is convinced that the credibility of the defendants' agents' assertions must be judged at trial. Additionally, simply because the defendants eventually chose another female for a position does not preclude a finding of sex discrimination in passing over the plaintiff. *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534–36 (11th Cir.1984). Thus, summary judgment must be denied.

As to the defendants' argument that dismissal of this case is warranted due to the plaintiff's failure to make a formal application, this Court finds that the evidence before the Court shows that the plaintiff indicated to the defendants her interest in the Nashville position. Numerous documents show that the defendants were considering plaintiff for a position in Nashville as part of their affirmative action plan for women. Although formal application was not made by the plaintiff, the conduct of the defendants' agents appears to have prevented plaintiff's application. Thus, this Court is satisfied that the defendants had actual knowledge of the plaintiff's interest and qualifications for a Motor Carrier Specialist position.

Therefore, the Court concludes that the plaintiff is likely to succeed on the merits of her case. While the vacancy issue will be resolved more firmly at trial, this Court believes that the plaintiff has presented substantial evidence to force some explanation from the defendants for her non-selection. At this preliminary stage, this Court finds the plaintiff's case facially meritous.

### B. Irreparable Injury, Harm to Others and Public's Interest

Based upon the evidence, this Court concludes that absent issuance of a preliminary injunction, the plaintiff will suffer loss of self-worth and self-esteem due to the defendants' actions. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 221, 102 S.Ct. 3057, 3060, 73 L.Ed.2d 721 (1982); *EEOC v. Chrysler Corp.*, 733 F.2d 1183, at 1186–1187 (1984 6th Cir.). Moreover, the limited injunctive relief requested by the plaintiff will neither harm others or the public's interests. In fact, notice to potential innocent victims will serve the plaintiff's interests in receiving complete equitable relief under 42 U.S.C. § 2000e–5(g) and the public's interests in maintaining effective enforcement of the Civil Rights laws. Given that appropriate relief may include placing the plaintiff in her rightful place but for the defendants' discriminatory actions pursuant to *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 764–67, 96 S.Ct. 1251, 1264–66, 47 L.Ed.2d 444 (1976) and given that notice of the pendency of the plaintiff's claims to persons selected by the defendants for the Nashville and Montgomery vacancies will not harm the defendants, this Court concludes that the requested injunction is warranted.

Accordingly, it is ORDERED that the defendants shall notify in writing any person selected to fill the positions of Motor Carrier Safety Specialist in either Nashville, Tennessee or Montgomery, Alabama of the pendency of the plaintiff's lawsuit. Appropriate notice of compliance with this ORDER shall be provided to the Court.

---

**2.** To be sure, a vacant motor carrier safety specialist position became available when Claud Gatlin chose to retire instead of accepting reassignment to the Kentucky office of Motor Carrier Safety. Although the defendants seem to argue that Gatlin's position was transferred to Kentucky and thus no vacancy existed for the plaintiff in Nashville, the Court questions the validity of this assertion because of prior statements and plans of the defendants.