45 F.3d 440
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Shenn-Song HSU, Plaintiff-Appellant,
v.
WYOMING DEPARTMENT OF TRANSPORTATION, Defendant-Appellee.
 No. 93-8129.
 United States Court of Appeals, Tenth Circuit.
 Dec. 22, 1994.
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and VRATIL,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Shenn-Song Hsu appeals from a summary judgment in favor of defendant Wyoming Department of Transportation (DOT). We exercise jurisdiction pursuant to 28 U.S.C. 1291 and affirm.
 
 
 4
 Plaintiff, a female of Oriental race and Chinese origin, was first employed by defendant as a finals engineer in December 1978. A finals engineer works in the office, reviewing the calculations of other engineers as well as other forms and papers to make sure they are properly completed. Plaintiff had a break in service from August 1981 to June 1982 to run a family business. She was rehired in June 1982 as a field construction engineer in the Casper office of District No. 2, and has been employed continuously by defendant ever since. She was classified as the equivalent of a grade A-8 or A-9 from December 1978 until October 1984 when she was promoted to an A-10. In January 1990 she was promoted to an A-11. She has not received any additional promotions.
 
 
 5
 Plaintiff applied for two A-15 positions in mid 1991. Although she met the minimum qualifications and was interviewed, she was not chosen for either position. Rather, two white males were chosen for the positions.
 
 
 6
 In February 1992 plaintiff asked her supervisor, Joe Kalasinsky, if she could be promoted to an A-13 field construction engineering position in District No. 2. She was advised that there was no need to fill an A-13 position in District No. 2 at that time. Plaintiff later applied for two other A-15 positions in another district which were filled by white males.
 
 
 7
 On July 9, 1992, plaintiff filed a formal charge of discrimination with the Wyoming Fair Employment Practices Commission (FEPC) and the Equal Employment Opportunities Commission (EEOC), alleging discrimination based on sex and race/national origin in promotions and assignments. The agency found no probable cause to believe discrimination had occurred, and dismissed the complaint.
 
 
 8
 Plaintiff then commenced the present action pursuant inter alia to Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e-2000e-17, alleging discrimination in promotions and rate of promotions, job assignments, and assignment of vehicles and job location. The district court granted defendant's motion for summary judgment.
 
 
 9
 We review the grant of summary judgment de novo, applying the same legal standard as used by the district court. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We examine the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Applied Genetics, 912 F.2d at 1241.
 
 
 10
 A four-part test is used to determine whether a plaintiff has established a prima facie case of discriminatory failure to promote. The plaintiff must show that she is a member of a protected class, that she applied and was qualified for a job for which the employer was seeking applicants, that despite her qualifications she was rejected, and that after her rejection, the position remained open and the employer continued to seek applicants from persons with the plaintiff's qualifications. Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 796 (10th Cir.1993). If the plaintiff establishes a prima facie case, the defendant has the burden of articulating a legitimate, nondiscriminatory reason for the failure to promote. Id. Once the defendant meets this burden of production, the plaintiff then has the burden of proving the defendant's proffered reason was a pretext for discrimination. Id.
 
 
 11
 Plaintiff challenges the district court's ruling that she failed to establish a prima facie case with respect to the A-13 position because she failed to show that defendant was seeking or recruiting anyone for the A-13 position, or that it was filled by anyone else. Plaintiff argues the question of whether a vacancy existed is a disputed issue of fact that must be tried, relying on Holland v. Dole, 591 F.Supp. 983 (M.D. Tenn.1984). She points to evidence that both Don Diller, the Director of DOT, and Joe Kalasinsky stated an A-13 position was vacant and budgeted at the time she requested promotion to that position.
 
 
 12
 Holland merely held that where there was conflicting evidence as to whether the employer had a vacant position which the plaintiff could have filled, the issue had to be tried. Id. at 990 & n. 2. Here the issue is not whether a vacant A-13 position existed, but rather whether defendant wanted or needed to fill the position. Defendant's evidence shows it did not. Diller clarified that just because the A-13 position was vacant and budgeted did not mean the need existed to fill the position or that applications were being accepted for it. Merwin Moore, the supervisor of the District No. 2 office, stated that District No. 2 "had no intent of creating, recruiting or hiring anyone for an A-13 position." Appellant's App. at 44. Moore explained that the A-13 position is utilized only when a district has more projects than its allotted number of A-15 engineers can supervise. District No. 2 has experienced a continual decline in the number and dollar value of construction projects and, in fact, lost one of its A-15 positions and crews in 1992. Id. at 44-45. While plaintiff in her brief disagrees that the dearth of projects in District No. 2 obviated the need for an A-13 position, assertions of counsel contained in briefs are insufficient to create an issue of fact for purposes of summary judgment. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 113 S.Ct. 635 (1992). She points to no evidence showing there was a need to fill the A-13 position.
 
 
 13
 Plaintiff notes that defendant has in the past created A-13 positions and promoted white males into them once it decided a man should move up the ladder. The evidence she relies on shows that two engineers had been promoted to unadvertised positions without submitting applications. One of these employees was promoted in another district; the other was promoted in District No. 2 but over eight years prior to plaintiff's lawsuit. This evidence is insufficient to create a dispute concerning defendant's claim that it had no intent or need to fill an A-13 position in District No. 2 in 1992. We agree with the district court that plaintiff failed to establish a prima facie case of discrimination with respect to the A-13 position.
 
 
 14
 We next consider defendant's failure to promote plaintiff to the A-15 positions. The district court relied on plaintiff's admission that the persons who were hired for all of the A-15 positions were more qualified than she. It therefore concluded there was no dispute that defendant had legitimate, nondiscriminatory reasons for hiring these applicants.
 
 
 15
 Plaintiff appears to contradict her own testimony by asserting that she was more qualified for the A-15 positions than the white males who were selected. She relies on Dr. Burke Grandjean's testimony that she was the most qualified engineer in his comparison group,[2] based on her educational achievements, work outside the DOT, and how early she obtained her professional engineer's license. However, Grandjean admitted he had not taken into account the fact that some of the comparators had a land surveyor's license, which plaintiff did not have, or that her performance evaluations for two of the last three years were below average. He also indicated that superior educational and licensing qualifications would not necessarily enhance one's ability to be promoted.
 
 
 16
 Plaintiff has pointed to no evidence showing that defendant relied on these qualifications for promotions. Mervin Moore, who selected the individuals for the two A-15 positions in the Casper office, stated that he did so based on their superior "experience in various districts and functions, including design, construction and supervisory responsibilities." Appellant's App. at 45. Joe Kalasinsky testified that Tim Hibbard, an A-15 who laterally transferred, was selected due to his well-rounded experience which included being in charge of several construction projects, working a few years in the lab, and working in design and as a technician. Calvin Goddard, an A-13 before the promotion, was chosen because he had a well-rounded construction background, and had designed some smaller projects.[3] Plaintiff failed to present evidence that her experience in these areas was superior to that of Hibbard and Goddard.
 
 
 17
 Then, citing defendant's reliance on Hibbard and Goddard's project experience, plaintiff argues they were more qualified only because she was discriminated against in assignment of projects. She relies on Dr. Kevin Murphy's opinion that she received substantially fewer career-enhancing job assignments than her white male peers during the same period. Murphy reached this conclusion by counting all new construction projects in District No. 2 between 1979 and 1992, then determining that plaintiff had acted as lead engineer on three projects, which constituted only 1.3% of the total. However, Murphy counted projects for years in which plaintiff was not eligible for those assignments, either because she was working as a finals engineer or had a break in service. Further, Murphy admitted he needed to know what projects were assigned to plaintiff's supervisor before he could analyze whether she got her fair share of assignments, and he did not know which projects had been assigned to her supervisor. Thus, we conclude his statistical evidence failed to create a material issue of fact as to whether plaintiff was discriminated against in project assignments. Summary judgment was appropriately granted on the claim of discriminatory failure to promote to an A-15 position.
 
 
 18
 Plaintiff next contends that because she alleged discrimination in assignments to distant locations, failure to assign her a vehicle, and assignment of secretarial tasks, and because defendant disputed her allegations, it was improper to grant summary judgment on these claims. To survive a summary judgment motion, "the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56." John Hancock Mut. Life Ins. Co. v. Weisman, 27 F.3d 500, 503 (10th Cir.1994). Plaintiff has not identified any evidence she submitted to create an issue for trial on these claims. Summary judgment was appropriately granted.
 
 
 19
 The next issue is whether plaintiff has presented sufficient evidence to establish discrimination in status and pay level. The FEPC examined the employment records for the eleven employees, including plaintiff, who were hired in 1978 or 1979 and were still employed by defendant. It found that five were ranked higher and earned more than plaintiff, three were at the same level as plaintiff, and two were one grade lower. Five of these engineers, all white males, earned less than plaintiff. These statistics led the FEPC to find that plaintiff had not been discriminated against in pay and promotions, and resulted in the district court's grant of summary judgment on the claim of discrimination in status and pay level.
 
 
 20
 Plaintiff does not really dispute that this evidence shows she is in the "middle of the pack" in terms of status and pay when compared to white male engineers hired around the same time as she. Rather, she argues that statistical evidence compiled by her expert, Dr. Murphy, which includes all engineers who worked for District No. 2 between 1978 and 1992, shows that engineers with less experience and qualifications than she have been promoted more quickly. This argument brings us to her next claim, that she was discriminated against in the rate at which she was promoted.
 
 
 21
 Statistical data showing a pattern of conduct toward a protected class can create an inference of discrimination against members of that class, but only if the statistics are based upon a comparison of similarly situated employees. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 532 (10th Cir.1994). The comparison group is not similarly situated to plaintiff. It includes employees who worked at any time in District No. 2 but may have obtained promotions in other districts. Until 1992, plaintiff limited her promotional opportunities to District No. 2. Further, the comparison group was not limited to engineers who, like plaintiff, worked as a finals engineer their first few years of employment and had a break in service.[4] Additionally, Murphy included in his comparison group engineers who received promotions as far back as the 1940s. However, the evidence shows that the workload in District No. 2 has varied over the years and has declined since the mid-1980s, a factor that could affect the rate at which engineers are promoted. Plaintiff was eligible for promotions in the 1980s and 1990s. Consequently, we agree with the district court's determination that plaintiff's statistical evidence was insufficient to defeat defendant's motion for summary judgment. In light of our disposition of the merits, we do not reach the issue of the timeliness of plaintiff's claims.
 
 
 22
 The judgment of the United States District Court for the District of Wyoming is AFFIRMED.
 
 
 
 **
 Honorable Kathryn H. Vratil, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Because it is unclear from the record provided whether Grandjean's comparison group included the employees hired for the two A-15 positions in the Cheyenne office, we do not rely on his opinion in evaluating this aspect of the failure to promote claim
 
 
 [3]
 Both Goddard and Hibbard had their professional engineering licenses
 
 
 [4]
 Plaintiff notes that defendant never contended in its response to her FEPC complaint that her work as a finals engineer was a reason for her slower rate of promotion. However, she points to no evidence disputing defendant's claim that this could cause her rate of promotion to differ from that of engineers who only worked in field construction