IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-60747
Summary Calendar
_____


RICKY D RHODES

               Plaintiff - Appellant


   v.

MARVIN RUNYON, Post Master General of
the United States Postal Service

               Defendant - Appellee


_____

Appeal from the United States District Court
for the Northern District of Mississippi
(4:94-CV-125-D-D)
_____
July 1, 1996
Before KING, DUHÉ, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

    Ricky D. Rhodes appeals the district court's granting of

summary judgment in favor of Marvin Runyon, Post Master General

of the United States Postal Service, in Rhodes's Title VII

lawsuit against the Postal Service alleging racial

discrimination.  We affirm.

_____

    [*]  Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

1

## I. BACKGROUND

During 1991, Rhodes, a black male, worked on a temporary basis at the U.S. Post Office in Greenville, Mississippi. On April 4, 1992, he received an appointment for a position as a part-time flexible carrier at the Greenville facility. As with all new employees, Rhodes was required to undergo a ninety-day probationary period during which he was to be trained to perform the duties of letter carrier. These duties included the delivery and the "casing," or sorting, of mail. Employees are advised at the beginning of their employment that they are subject to "separation," or termination, at any time during the probation period if they fail to meet the performance standards of the Postal Service.

Gertrude Campbell, a black female, supervised Rhodes during his probationary period. Campbell conducted Rhodes's thirty-day, sixty-day, and eighty-day evaluations. Campbell expected a carrier to become proficient in the casing of at least two routes during the probationary period. Such proficiency included the ability to case at least eighteen letters and eight "flats," or magazine-sized pieces of mail, per minute. Among the individuals assigned to train Rhodes during his probationary period were experienced letter carriers Leon Brown and Elijah Phillips, both black males. For a short period of time after his first

2

evaluation, Rhodes was assigned to the Crossroads Station where he was supervised by John Grossi, a white male.  According to Rhodes, Grossi addressed and treated him in a racially derogatory manner while he was working at the Crossroads Station.

In Campbell's opinion, Rhodes's performance during the probationary period was marred by recurrent problems and unresolved deficiencies.  Among other things, Rhodes never reached the required level of proficiency in casing.  Consequently, after Rhodes's eighty-day evaluation, Campbell notified the Superintendent of Postal Operations in Greenville that she felt Rhodes should be terminated.  The Superintendent approved her decision and on June 25, 1992, Campbell issued Rhodes a letter of separation.

Rhodes filed an administrative complaint alleging that in being discharged he had been discriminated against on the basis of race.  The Postal Service investigated the complaint and Rhodes elected to receive a final agency decision without a hearing as to his discrimination claim.  In the Postal Service's final decision, it found no discrimination in connection with Rhodes's separation.  Rhodes appealed this decision to the Office of Federal Operations of the Equal Employment Opportunity Commission (the "EEOC").  The EEOC found no discrimination and Rhodes's subsequent request for reconsideration was denied.

On May 10, 1994, having exhausted his administrative options, Rhodes brought this action in the United States District

3

Court for the Northern District of Mississippi. After discovery, the Postal Service moved for summary judgment and, on November 1, 1995, the district court entered an Order granting the motion. In its Memorandum Opinion, the district court held that Rhodes failed to establish a prima facie case of discrimination. In addition, the court held that Rhodes presented insufficient evidence tending to prove that the Postal Service's reasons for discharging him were a pretext for discrimination. Rhodes timely appealed.

## II. ANALYSIS

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). First, we consult the applicable law to ascertain the material factual issues. King v. Chide, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1994); FDIC v. Dawson, 4 F.3d 1303, 1306 (5th Cir. 1993), cert. denied, 114 S. Ct. 2673 (1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a dispute about a material fact is "genuine." Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 533 (5th Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 809 (5th Cir. 1991). There is no genuine issue for trial, however, if "the record--taken as a whole--could not lead a rational trier of fact to find for the nonmoving party." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1084 (5th Cir. 1994) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Because it is unusual to find direct evidence of employment discrimination, courts have devised an inferential method of proving such discrimination. Davis, 14 F.3d at 1085. In McDonnell Douglas Corp. v. Green, the Supreme Court set forth the basic order of inferential proof for discrimination cases brought under Title VII. 411 U.S. 792 (1973). In a Title VII case, as in any other action in which the plaintiff seeks to enforce rights under a statute, the plaintiff is required to carry the initial burden of establishing facts sufficient to warrant recovery. Armstrong v. City of Dallas, 997 F.2d 62, 65 (5th Cir. 1993). In a discharge case, a plaintiff establishes a prima

5

facie case of discrimination by demonstrating that: (1) he is a member of a protected group; (2) he was qualified for the job he held; (3) he was discharged; and (4) after his discharge, his employer filled the position with a person who is not a member of the protected group.  Norris v. Hartmarx Specialty Stores, Inc., 913 F.2d 253, 254 (5th Cir. 1990).

Once the prima facie case is established, a rebuttable presumption, or inference, of discrimination arises.  Armstrong, 997 F.2d at 65 & n.4.  ("More recently the [Supreme] Court has described this as an inference.").  At this point, under the burden-shifting framework established in McDonnell Douglas, the defendant bears the burden of articulating a legitimate, nondiscriminatory business reason for the challenged action.  Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995).  If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reasons were a pretext for discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 267 (5th Cir. 1994).  Use of the term "pretext" in this context does not mean that the Title VII plaintiff must show that he was discharged solely on the basis of his race, without regard to any alleged deficiencies:  "[N]o more is required to be shown than that race was a `but for' cause."

6

McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 282 (1976).

Summary judgment is ordinarily "an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." Thornbrough v. Columbus and Greenville R.R. Co., 760 F.2d 633, 640 (5th Cir. 1985). This is because, to defeat a motion for summary judgment, the plaintiff need not prove a prima facie case of discrimination, but must simply raise a genuine issue of material fact as to the existence of a prima facie case. Id. at 641 n.8. In the instant case, Rhodes clearly met two of the four elements of a prima facie case under Title VII--the first and third elements. As a black man, Rhodes is a member of a protected group; and he was discharged from his postal position.

Nonetheless, the district court found that Rhodes failed to establish a prima facie case because he did not satisfy the second and fourth elements. The court determined that Rhodes failed to raise a genuine issue of material fact with regard to whether he was qualified for the postal job and with regard to whether the Postal Service replaced him with a nonminority employee.

Rhodes maintains that he did establish a prima facie case. He contends that as to the second element there was evidence that he would have been qualified for the postal position by the end

7

of his probationary period.[1]  As to the fourth element of the

prima facie case, rather than offering evidence, Rhodes argues

that this element is unnecessary.  Citing <u>Jones v. Western

Geophysical Co.</u>, he contends that a plaintiff is not required to

show that he was replaced by a member of a nonprotected group:

> All that the plaintiff need do is prove by a
> preponderance of the evidence that he was discharged
> from the position for which he was qualified "under
> circumstances which give rise to an inference of
> unlawful discrimination."  The underlying purpose of
> the fourth element in the McDonnell Douglas formulation
> is precisely to establish this unlawful inference of
> discrimination.  But proof that the employer replaced
> the fired minority employee with a nonminority employee
> is not the only way to create such an inference.

669 F.2d 280, 284 (5th Cir. 1982).

Notwithstanding the fact that the fourth element need not be

specifically addressed in every discrimination inquiry, we find

that Rhodes failed to establish a prima facie case because he did

not produce evidence giving rise to an inference of unlawful

discrimination.  Moreover, resolution of the prima facie issue is

---

[1]  In his appellate brief, Rhodes supports this assertion by citing to a statement that Campbell made during her June 28, 1995 deposition.  Speaking of Rhodes's casing performance at the time of his thirty-day evaluation, Campbell stated:  "I think that he could possibly have [met the casing requirement] on [route] 9 and [route] 13 possibly."  To characterize this statement as Rhodes does--i.e., "in [Campbell's] opinion, [Rhodes] would have met the casing requirement on these two routes by the end of his probationary period"--is a bit of a stretch.  In this regard, we note that the raising of "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" is insufficient to show that there is a genuine issue of material fact.  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871-73 (1990), <u>Hopper v. Frank</u>, 16 F.3d 92 (5th Cir. 1994), and <u>Davis</u>, 14 F.3d at 1086, respectively).

8

unnecessary because Rhodes's case ultimately stumbles during the final movement of the McDonnell Douglas procedural minuet--the pretext test. Rhodes failed to present evidence sufficient to convince a reasonable finder of fact that the Postal Service's proffered reasons for his discharge were pretextual.

Assuming that Rhodes established a prima facie case, the Postal Service had "the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747 (1993) (citation and internal quotation marks omitted). The Postal Service met its burden of production by offering a legitimate reason for the decision to terminate Rhodes--he did not measure up to the requirements of the job.

"[W]here, as here, the employer offers a legitimate, nondiscriminatory explanation for the adverse action, the burden is on the employee to show that the explanation is merely a pretext for discrimination." Armstrong, 997 F.2d at 67. To show that the proffered explanation was pretextual Rhodes was required to show that "but for" his race he would not have been discharged. Ray v. Tandem Computers, Inc., 63 F.3d 429, 435 (5th Cir. 1995); Jackson v. City of Killeen, 654 F.2d 1181, 1186 (5th Cir. 1981) (citing McDonald, 427 U.S. at 282). Rhodes was required to show that race was a "significant factor" in the Postal Service's decision to discharge him. Walsdorf v. Board of Comm'rs, 857 F.2d 1047, 1052 (5th Cir. 1988) (finding that

9

defendants discriminated against plaintiff, a female police officer, on the basis of sex in not selecting her for promotion). The ultimate issue is whether there was sufficient evidence for a reasonable finder of fact to conclude that Campbell's unfavorable evaluations of Rhodes were merely a pretext, and that the true reason for his dismissal was his race.  Grizzle, 14 F.3d at 267.

A review of the record convinces us that no reasonable factfinder could believe that the reasons offered by the Postal Service were pretexts for discrimination.  Campbell testified that she formally evaluated Rhodes three times during his probationary period.  She indicated in her thirty-day evaluation that, although she was generally pleased with Rhodes's performance, "he did not fully meet the expectations of the position."  Moreover, as his probationary period continued she found that "he did not subsequently meet those expectations." Campbell explained:

> In his 60 and 80-day evaluations I listed any number of performance deficiencies, including the inability to case mail at an acceptable rate, the miscasing and misdelivery of mail, unsafe parking of his Postal vehicle, parking at unauthorized park points on the routes he was assigned to deliver, failure to secure the mail in his vehicle when parking, failure to follow my instructions concerning calling in on time when he would be unable to deliver his route without assistance, customer complaints concerning his performance, etc.  Those evaluations told Mr. Rhodes exactly what was wrong with his work and what I expected of him.

In his appellate brief, Rhodes spends a good deal of time focusing on Campbell's evaluation of his casing abilities.

10

However, Campbell's dissatisfaction with Rhodes's casing performance was merely one aspect of her overall impression that he was "not the sort of individual we would want as a permanent employee."  Campbell testified:  "[T]he failure to case mail at an acceptable rate was only one of the problems I had with his work.  The remaining problems mentioned above, especially his failure to follow my instructions, would have been more than enough to justify his separation."

Furthermore, perhaps the fact most fatal to Rhodes's attempt to show that the reasons proffered by the Postal Service were pretextual is the fact that it was Campbell who decided to terminate Rhodes.[2]  Campbell is a black woman.  She was Rhodes's supervisor and she testified that the decision to discharge Rhodes was entirely her own.  It is particularly difficult to show racial animus when both parties are members of the same race.  See Farias v. Bexar County Bd. of Trustees for Mental Health and Mental Retardation Servs., 925 F.2d 866, 879 (5th Cir.), cert. denied, 502 U.S. 866 (1991).  We were faced with a similar scenario in Farias, where a plaintiff of Hispanic descent alleged that the defendant trustees voted not to renew his

---

[2]     In attempting to show that the reasons articulated by the Postal Service for his discharge were a pretext for discrimination, Rhodes alleges that John Grossi used racially derogatory language in addressing him and discriminated against him in job assignments at the Crossroads Station.  Even accepting Rhodes's allegations as true for purposes of reviewing this summary judgment, this argument is unavailing.  It is uncontested on appeal that the decision to discharge Rhodes was Campbell's.

contract on the basis of his national origin.  Id.  In Farias, we held that the district court's finding of no discrimination was not clearly erroneous because one of the three defendants, three other trustees who voted not to renew the plaintiff's contract, and the person who replaced the plaintiff, were all of Hispanic ancestry.  Id. at 878-79.  Similarly, in the case at bar, the evidence before us demonstrates that Campbell did not consider Rhodes's race in determining to discharge him during the course of his probationary period.

We conclude that there is insufficient evidence that but for Rhodes's race he would not have been terminated by the Postal Service.  Rhodes cannot prevail on his Title VII claim because the record, taken as a whole, could not lead a reasonable finder of fact to find that the Postal Service's articulated reasons for discharging him were pretextual.


## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

12